AO 106 (Rev. 5/85)  Affidavit for Search Warrant

# United States District Court

_____ DISTRICT OF ___DELAWARE_____

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

**REDACTED**

Newark, Delaware,
described more particularly on
Attachment A

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: 03-145M

I _Keith Salter, United States Postal Inspector,_ being duly sworn depose and say:

I am a(n) _United States Postal Inspector_ and have reason to believe
Official Title

that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

REDACTED    Newark, Delaware, described more particularly on
Attachment A

in the _____ District of _Delaware_____
there is now concealed a certain person or property, namely (describe the person or property)

described more particularly on Attachment B

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence of a crime

in violation of Title __18__ United States Code, Section(s) __2252__
The facts to support the issuance of a Search Warrant are as follows:

Affidavit attached.

FILED
JAN 27 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Continued on the attached sheet and made a part hereof.    ☒ Yes    ☐ No

_____Keith Salt_____(signature)_____
Signature of Affiant
Keith Salter, US Postal Inspector

Sworn to before me, and subscribed in my presence
_December 2, 2003_____ at _Wilmington, Delaware_____
Date                                                                                          City and State

Honorable Mary Pat Thynge
United States Magistrate Judge
Name and Title of Judicial Officer

_____(signature)_____
Signature of Judicial Officer

## ATTACHMENT A

The subject premises is part of a strip mall located on the southern side of the ▮▮▮▮ Newark, Delaware 19711. The subject premises is located on the eastern end of the complex between a dry cleaner and a financial institution. The name ▮▮▮▮ clearly visible on the front of the premises.

## ATTACHMENT B

One Express Mail tyvek envelope addressed to Donald Cohen, c\o ▓▓▓▓▓▓▓▓ Newark, DE 19711, with a return address of YBC, P.O. Box 176, Clear Spring, MD 21722, with an affixed $13.65 postage stamp.

One VHS videotape titled, "Sports Exam", with the initials KS carved into the plastic case of the videotape under the front flap

All video cassette tapes, photographs, negatives, drawings, magazines, or other visual media or literature depicting or describing minors engaged in sexually explicit conduct. (Authorization is granted for the viewing and review of these videotapes at a time subsequent to the date of the search).

Any and all correspondence, materials, diaries, notes and any other records, including opened and unopened e-mail or instant messages, relating to the ordering, receipt, acquisition, trade, storage, possession, or sale of material depicting minors engaged in sexually explicit conduct, including but not limited to correspondence to and from YBC Vids, P.O. Box 176, Clear Spring, MD 21722.

Any and all books, ledgers, and other records bearing on the production, reproduction, receipt, shipment, or on orders, requests, purchases or transactions of any kind involving the transmission through interstate or foreign commerce including the U.S. Mail or by computer, any visual depiction of minors engaged in sexually explicit conduct.

Records indicating occupancy or ownership of the premises described above, such as utility bills, mail envelopes, or addressed correspondence.

The following may be seized and searched for the items set forth in the three preceding paragraphs above, or seized for use in the search of the items listed below. Agents may transport these items for searching to a site other than where seized:

1. All computers, computer hardware, computer software and computer documentation, including but not limited to tapes, cassettes, cartridges, commercial software and manuals, hardware, computer disks, CD-ROMS, disk drives, monitors, printers, scanners, modems, tape drives and other computer related equipment.

2. Any devices capable of storing information and/or data in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer or with the aid of computer-related equipment. This media includes floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, video cassettes and other media which is capable of storing magnetic coding, as well as punch cards, and/or paper tapes, and all printouts of stored data.

3. Any and all electronic devices which are capable of analyzing, creating, displaying, converting or transmitting electronic or magnetic computer peripherals, word

## AFFIDAVIT

I, Keith Salter, United States Postal Inspector, having duly sworn, do hereby swear and affirm the following facts as being true to the best of my knowledge and belief:

1. This affidavit is made in support of an application for an Anticipatory Search Warrant for the business, ▮▮▮▮ and seize evidence of violations of Title 18 U.S. Code, Sections 2252 (Receiving through the Mail Material Involving the Sexual Exploitation of Minor) and 2252A (Receiving through the Mail or Computer Material Constituting Child Pornography) (hereinafter the "specified federal offenses"). ▮▮▮▮t is apparently owned and/or operated by Donald W. Cohen and is located at ▮▮▮▮▮▮▮▮▮▮ Newark, Delaware 19711.

2. Your affiant is a United States Postal Inspector having been so employed by the United States Postal Inspection Service for fourteen (14) years. Your affiant is presently assigned to the Philadelphia, PA Field Office's Child Exploitation Unit, investigating instances in which the U.S. Mails are used for the transportation of material involving the sexual exploitation of minors in violation of Title 18, United States Code, Sections 2252 and 2252A. Your affiant has received extensive training regarding Child Sexual Exploitation and the use of the U.S. Mails to receive and distribute material involving the sexual exploitation of minors from the U.S. Postal Inspection Service. This training includes basic Prohibitive mails training as a portion of the U.S. Postal Inspection Service School, annual three day Inspection Service training, a three day Public Agency Training Council Child Sexual Exploitation Course, and 40 hours training dealing with child exploitation and the Internet, sponsored by the U.S. Department of Justice, Office of Juvenile Justice and Delinquency Prevention. I am a member of the Child Exploitation Task Force consisting of Federal, State, and local law enforcement agencies whose duties include the investigation of the production, trafficking, sale and distribution of child pornography.

3. For the purposes of this affidavit, "child pornography" refers to any depiction of a minor engaged in "sexually explicit conduct", and "child pornography" as these terms are defined in Title 18, United States Code, Section 2256 (1), (2), (5) and (8).

4. I am personally familiar with all the facts and circumstances surrounding this investigation both from my own investigative activity and from information obtained by other law enforcement officers, who have communicated the results of their investigation to me.

5. The Child Exploitation Task Force Leader is United States Postal Inspector Thomas F. Kochman. Inspector Kochman has been involved in investigations dealing with the sexual exploitation of minors for more than 12 years. Inspector Kochman has received extensive training in the field of pedophilia and child pornography. He has participated in more than 200 child pornography investigations conducted in the District of Delaware, the District of New Jersey, and both the Middle and Eastern Districts of Pennsylvania. He has provided assistance nationally to other offices of the United States Postal Inspection Service as well as the FBI, U.S. Customs, and numerous state and local agencies. It has been the experience of the experts who have provided training to us as well the personal experiences of Inspector Kochman and myself, that pedophiles and individuals interested in child pornography almost always maintain and possess their materials

(pictures, films, correspondence, photographs) in the privacy and security of the own homes and typically retain such materials for many years. In addition, pedophiles and individuals interested in child pornography often correspond and/or meet each other to share information and materials; rarely destroy correspondence from other pedophiles and individuals interested in child pornography, unless their activities are uncovered by law enforcement officials or others; conceal such correspondence as they do their sexually explicit materials; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interest in sexual contact with children and/or child pornography. This behavior has been documented by other Postal Inspectors and by other law enforcement officers involved in the investigation of child pornography and child sexual abuse throughout the United States. Inspector Kochman conducted the undercover portion of this investigation.

### Details Of Investigation

6. In describing the details of this investigation below I have quoted from correspondence exchanged between Donald W. Cohen and an undercover Postal Inspector. In quoting these messages I have quoted the messages exactly, and any apparent typographical or grammatical errors are in the originals.

7. Donald Cohen was identified as an individual interested in child pornography during a joint investigation involving the United States Postal Inspection Service and the Dallas Texas Police Department. This investigation was conducted in early 2000. The investigation uncovered an internet business which sold access to internet web sites which provided child pornography to those individuals who subscribed. Payments were made to the subject business "on-line" via credit card. Individuals paid as much as $29.95 for monthly access. Cohen had been a subscriber to one or more of these web sites, and had used his credit card as payment. The investigation identified Cohen's residence as 1400 Lincoln Avenue, Wilmington, Delaware 19809.

8. On or about September 25, 2003, a letter was sent to Donald Cohen at his previously listed address, 1400 Lincoln Avenue, Wilmington, Delaware. The letter was an invitation to request a listing of "Specialty Videos". The letter stated "I feature everything that you can imagine on my videos and I specialize in the taboo, hard to find, forbidden material that people are looking for." The lower potion contained a section to be completed by the recipient and returned to an under cover post office box. The return address was listed as YBC Vids, P. O. Box 176, Clear Spring, MD 21722. A space was provided for name address and signature. A check list was provided listing the subject matter which was of interest to the individual completing the information request. The list was as follows:

Animals, Bondage, Enemas, Pissing, Shitting, Greek, B&D, S&M, Pedophilia, Preteen Boys/Girls, Young Teen Boys/Girls, Incest, Masturbation, Piercing, Rubber, Lesbians, Anal, Rape, Diapers, TV, Spanking, Gay Males, and Special Requests

9. On or about October 6, 2003 a letter was retrieved by Postal Inspectors at P. O. Box 176, Clear Spring, Maryland 21722. The envelope bore no return address. The letter was postmarked October 1, 2003 at Wilmington Delaware. The envelope contained a reply to an initial request for information concerning "Specialty Videos". The reply was from D. Cohen, c\o ▓▓▓▓▓▓▓▓▓▓▓▓ Newark, Delaware 19711. The reply contained a signature on the appropriate line. Cohen requested a listing of videos by checking the following interests from the list previously mentioned in paragraph 8; Preteen Girls, Incest, Young Teen Girls, and Pedophilia.

10. On or about October 8, 2003, a letter was mailed to D Cohen, c\o ▓▓▓▓▓▓▓▓▓▓ Newark, DE 19711. The letter contained a listing of eight video tapes, listed as "Video #1", "Video #2" etc... Each video was described in detail including the sexual explicit activities contained on the video tape. Each video tape described involved young girls between nine and thirteen years of age. All involved sexual explicit activities with either young males or adult males. Also included was an order form indicating that each video cost $25.00. Space was provided to list those videos selected, amount of payment enclosed, shipping address, E-mail address, and signature line.

11. ON or about October 30, 2003, a letter was retrieved from P. O. Box 176, Clear Spring, Maryland 21722. The letter bore the return address of ▓▓▓▓▓▓▓▓▓ Newark, DE 19711, and was postmarked October 28, 2003 at Wilmington Delaware. The envelope contained an order form, a $25.00 Money Order, and $5.00 United States currency. The Money Order bearing serial number 42596029, was drawn on Wachovia Bank, payable to YBC Vids, and was dated October 22, 2003. The $5.00 was to cover shipping as instructed on the order form. The shipping instructions indicated to ship to D. W. Cohen at the shipping address of c\o ▓▓▓▓, ▓▓▓▓▓▓▓▓▓▓ Newark, DE 19711. The form was signed and an E-mail address of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ was listed. Cohen indicated his video selection was "Video #2. Video #2 was described on the list mentioned in paragraph 10 and read as follows:

> "Two soccer girls, about 9 and 12 have to get a physical at
> school so they can play sports. The doctor has them get naked
> and then one at a time has them lay naked on the exam table. He
> begins by fingering the first girls pussy while she jacks him off
> and sucks his dick. He doses the same with the second girl,
> except after she sucks his dick he fucks her and blows his load
> on her hairless pussy."

12. Postal personnel at the Newark Delaware Post Office report that Donald Cohen receives mail at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, Newark Delaware 19711. Delaware Department of Motor Vehicles lists a 2003 Infinity automobile, registered to Cohen, at ▓▓▓▓▓▓▓▓▓▓▓▓ Newark, Delaware.

13. On or about December 1, 2003, your affiant reviewed the videotape intended for delivery to Donald Cohen. The video tape is labeled "Sports Exam". This videotape contains scenes of minors engaged in sexually explicit conduct as defined in Title 18, United States Code, Section 2256. Prior to placing the video in an Express Mail envelope your affiant carved his initials (KS) into the plastic case of the videotape under the front flap. The tape was then placed in an Express Mail envelope which bore the return address of YBC, P. O. Box 176, Clear Springs, MD 21722 addressed to D. Cohen, c\o 1450 Kirkwood Hwy, Newark DE 19711. A postage stamp in the amount of $13.65 was affixed to the envelope.

14. On or about December 1, 2003, your affiant conducted surveillance of the subject premises. The subject premises is part of a strip mall complex located ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. The subject premises is situated between a dry cleaning business to the east and a financial institution to the west. ▓▓▓▓ is plainly marked on the front of the store front.

15. On December 3, 2003, an undercover Postal Inspector will deliver the package containing the ordered videotape to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, Newark, Delaware. Postal Inspectors and others will then maintain surveillance at that location until the package is accepted and the person accepting it enters the premises with the package and/or its contents.

16. When the videotape is taken inside the subject premises, probable cause will exist that evidence of the specified federal offenses will be found inside the subject premises. Accordingly, I seek authorization for law enforcement officers to enter and search the subject premises at such time as it is determined that the videotapes have been taken inside the ~~residence~~ *premises*. *KS 12/2/2003*

17. The correspondence sent by Donald Cohen as set forth above in which Cohen lists his interests in material involving child pornography, specifically pedophilia, preteen and young girls and incest, and in which he orders a videotape depicting young children in sexual situations indicates that Donald Cohen is a person who has a sexual interest in children and who is interested in child pornography. Based on my experience and that of Inspector Kochman and others, as set forth generally in paragraph 5 above, and based upon the information known about Donald Cohen, there is probable cause to believe that the items listed on attachment B will be found within the subject premises.

18. This affidavit requests authority to remove all videotapes found during the search to another location where the tapes may be viewed in their entirety. Based upon numerous prior investigations conducted by the United States Postal Inspection Service concerning the use of the U.S. Mails to receive and possess child pornography, it has been determined that depictions of child pornography can be hidden within video tape cassettes in various ways. For example, such videotapes containing child pornography may be stored within cassette containers and boxes containing inaccurate and misleading descriptions of the contents of the videotape. Further, visual depictions of child pornography may be spliced or merged into a later portion of a videotape containing seemingly innocuous subject matter at the beginning of the videotape. Consequently, in order to conduct a thorough examination of the content of the videotapes, it is necessary to

examine the contents of such videotapes in their entirety. Any tapes later found not to contain child pornography will be returned to the subject premises.

19. This affidavit requests authority to search all documents, ledgers, address books and electronic media for evidence, fruits and instrumentalities of the federal offenses and for contraband. Based on the circumstances of this offense, and based upon my training, education, and experience, individuals who buy, sell, and trade illegal pornographic material often retain records of their dealings. Quite often, these records may be kept electronically, that is on computers or on electronic storage media. However, it is not uncommon for such individuals also to retain documents, letters, and address books, which record transactions related to child pornography and the identity of the individuals with whom the transactions are conducted. Accordingly, authorization is sought to seize and search all documents, ledgers, address books and electronic media for evidence, fruits and instrumentalities of the federal offenses and for contraband.

20. This affidavit requests authority to search any computers and any other devices which can store documents and images in electronic form. Based on circumstances of this offense as described herein, and based upon my training, education and experience, individuals who solicit and deal in illegal pornographic material via the Internet often retain E-mail, pictures and electronic data pertaining to their dealings on their computers and on other media for electronic storage. Also, such individuals will often print and retain pictures depicting illegal pornographic materials. Consequently, in order to conduct a thorough examination of the content on computers and computer storage media, it is necessary to examine all of the files, programs and data which exist on any computers and storage media. For the reasons set forth below, authority is requested to remove execution of this search warrant to another location where such computers and other electronic storage devices may be examined in their entirety. Any such equipment, data storage devices and related materials found not to contain evidence of the specified federal offenses will be returned to the subject premises.

## SEARCH OF COMPUTERS

21. Based on my personal experience and on my discussions with those trained in forensic computer analysis who have analyzed evidence from computers in prior investigations, searching computerized information for contraband or evidence or instrumentalities of crime commonly requires that a qualified computer expert accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

    a.    <u>The volume of evidence</u>. Computer storage devices (such as RAM, hard disks, diskettes, tapes, laser disks, Bernoulli drives) can store the equivalent of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence; he might store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence

5

or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored and it would be impractical to attempt this kind of data search on site.

    b.    <u>Technical requirements</u>. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, however, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password protected, or encrypted files. Because computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code embedded in the system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis. In addition, information and data stored in an electronic format may be "encrypted" which means it is unreadable absent use of a password or key to "decrypt" the information. Also, specialized equipment, which cannot be transported easily to every search site, may be required in order to review information stored in an electronic format on certain computer equipment or computer peripherals.

For these reasons this affidavit request permission to remove the computer so that a qualified computer examiner can examine it in an appropriate facility.

    22. Based on my experience and my discussions with forensic computer analysts I understand that the analysis of electronically stored data, whether performed on-site or in a laboratory or other controlled environment, may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the pertinent files and at file titles, in order to locate the evidence and instrumentalities authorized for seizure by the warrant); "opening" or reading the first few "pages" of such files in order to determine their precise contents; "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; or performing electronic "keyword" searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation. We anticipate these techniques may be employed in this case.

    23. Based on my experience and my discussions with forensic computer analysts, I understand that searching computerized information for evidence or instrumentalities of crime commonly requires law enforcement personnel to seize most or all of a computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a controlled environment. The peripheral devices, which allow users to enter or retrieve data from the storage devices, vary widely in their compatibility with other hardware and

software. Many systems storage devices require particular input/output devices in order to read the data on the system. It is important that the analyst be able to properly reconfigure the system as it now operates in order to accurately retrieve the evidence listed above. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices.

    24. Therefore, by this application, I am requesting authority to search the subject premises for the items set forth and described in Attachment B if the events in Paragraph 15 occur, that is, that the package containing the ordered videotape, "Sports Exam" is accepted and taken inside the premises at ███████████████ Newark, Delaware.

KEITH SALTER
United States Postal Inspector

Subscribed to and sworn to before me this 2nd day of December 2003.

Honorable Mary Pat Thynge
United States Magistrate Judge
District of Delaware

CERTIFIED: 12/2/03
AS A TRUE COPY:
ATTEST:
PETER T. DALLEO, CLERK

Deputy Clerk

7